UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER MELENDEZ, | **COMPLAINT** |
| Plaintiff, | **Civil Action No.:** |
| -against- | Jury Trial Demanded |
| NYC HEALTH + HOSPITALS CORPORATION, | |
| Defendant. | |

JENNIFER MELENDEZ ("Plaintiff"), by and through her attorneys, STEVENSON MARINO LLP, as and for her Complaint against NYC HEALTH + HOSPITALS CORPORATION ("Defendant" or "HHC"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon violations that Defendant committed of Plaintiff's rights guaranteed to her by: (i) the disability discrimination provisions of the Americans with Disabilities Act of 1990 ("ADA"); 42 U.S.C.A. § 12112(a); (ii) the disability discrimination provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a); (iii) the anti-retaliation provisions of the ADA, 42 U.S.C. § 12203(a); (iv) the anti-retaliation provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(7); (v) the reasonable accommodation provisions of the ADA, 42 U.S.C.A. § 12112(b)(5)(A); (vi) the cooperative dialogue provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(28); and (vii) any other claim(s) that can be inferred from the facts set forth herein.

1

2.     As described below, following Plaintiff's gruesome knee injury requiring treatment in the emergency room and her subsequent request for a reasonable accommodation, Defendant discriminated against Plaintiff by failing to engage in an interactive process/cooperative dialogue under the ADA and NYCHRL and unreasonably denying her accommodation request under the ADA and NYCHRL. As a result of her injury and the physical limitations it imposed, Defendant terminated her employment on the basis of her disability and/or request for an accommodation.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.     On October 15, 2021, Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No.: 520-2022-00831.

4.     Thereafter, the EEOC issued a Notice of Right to Sue ("Notice") for Plaintiff, which Plaintiff received on July 19, 2022.

5.     Plaintiff has timely filed this Complaint within ninety days of receiving the Notice.

## JURISDICTION AND VENUE

6.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

7.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

8.     At all relevant times herein, Plaintiff worked for Defendant in New York, and was an "employee" entitled to protection as defined by the ADA and the NYCHRL.

2

9.     At all relevant times herein, Defendant was and is a New York corporation with its principal place of business located at 125 Worth Street, New York, New York 10013. During the relevant period, Defendant employed at least fifteen employees and thus is an "employer" within the meaning of the ADA and the NYCHRL.

## BACKGROUND FACTS

10.     HHC is the largest public health care system in the United States, providing inpatient, outpatient, and home-based services in over seventy locations, including its headquarters located at 125 Worth Street, New York, New York 10013.

11.     Plaintiff was employed by HHC, located at 50 Water Street, New York, New York, from in or around September 2017, to August 31, 2021. On October 22, 2018, Plaintiff was promoted to the position of Associate Executive Director of HHC's At-Home Division ("the Division").

12.     In her role as Associate Executive Director, Plaintiff was responsible for the strategic planning and oversight of patient experience and staff management initiatives, operations, and all related programs, policies, and procedures.

13.     In response to the outbreak of the Covid-19 pandemic in New York City, from April 2020 to January 2021, Plaintiff was responsible for the operation of a hotel isolation program that required her to routinely work as many as 100 hours per week.

14.     In late-February/early-March 2021, Plaintiff met with her supervisor at HHC, Nicole Jordan-Martin, to discuss the mental and physical impact, which included diagnosed depression, caused by the tremendous amount of work that she performed on behalf of HHC in response to the pandemic. Jordan-Martin recommended that Plaintiff take some time off of work as a result of the depression and burnout that she suffered from her work duties.

15.     On or around March 9, 2021, at Plaintiff's request supported by documents from her primary care physician, HHC approved medical leave pursuant to the Family and Medical Leave Act ("FMLA") of 1993 that spanned from March 9, 2021, to June 11, 2021.

16.     On May 4, 2021, Plaintiff suffered a concussion when she injured herself in a bike riding accident. The concussion that Plaintiff suffered caused her to experience severe headaches, blurred and double vision, and unbalanced coordination.

17.     On June 6, 2021, Plaintiff sent an email to HHC's Leave Administration and Kevin Marrazzo, an HHC Equal Opportunity Officer ("EEO"), requesting extended leave as an accommodation request due to her continued symptoms related to the concussion that she suffered. On June 14, 2021, at HHC's request, Plaintiff provided medical documentation from her physician supporting her extension request due to medical necessity based on her physical impairment.

18.     On July 7, 2021, Marrazzo sent an email to Plaintiff requesting an update on her medical status and asking about her possible return on July 8, 2021. On that same day, Plaintiff responded that while she was not medically cleared to return to work due to continued headaches and vision impairments, she would follow-up with the EEO office on July 12, 2021, as that was the date of her next scheduled appointment with her physician.

19.     On July 12, 2021, Plaintiff followed up with Marrazzo providing medical documentation that she was cleared to return to work on August 9, 2021. On July 27, 2021, Marrazzo responded that her request for extended leave was granted as an accommodation, extending her medical leave to August 9, 2021.

20.     On August 6, 2021, Plaintiff was in a jet skiing accident, which resulted in a significant and gruesome injury to her left leg/knee. As a result of this injury, her left leg was placed in a stabilizer, and it severely prohibited her mobility.

4

21.     On August 8, 2021, Plaintiff sent an email to her direct supervisor at HHC, Nicole Jordan-Martin, informing her of the accident and injury and requesting a reasonable accommodation to telecommute until she was able to walk. While Plaintiff was fully ready and able to return to work on this date, her accommodation request based on her significant knee injury sought remote work for only a brief period based on her inability to walk as required by her commute.

22.     On that same day, Jordan-Martin responded by text message that while she is sorry to hear of Plaintiff's accident and wishes her a speedy recovery, she could not authorize telecommuting and recommended that Plaintiff consult with Human Resources ("HR") and HHC's Leave Administration regarding her leave options. Jordan-Martin followed up with an email on August 9, 2021, with the same message, copying Leave Administration and HR on the email.

23.     On August 9, 2021, Plaintiff emailed Marrazzo to explain her accident, injuries, and the resulting restrictions caused by her disability on her ability to commute to the office. Based on her temporary disability, she requested to work remotely until she regained her mobility in order to commute into the office.

24.     On August 13, 2022, Plaintiff provided Marrazo with a letter dated August 9, 2021, from Dr. Daniel P. Feghiff, an Orthopedic Surgeon. The letter explained that Plaintiff sustained a significant injury to her knee and detailed the medical procedures performed to treat the injury. The letter additionally explained that Plaintiff's left knee was immobilized to allow for healing to occur, making it impossible to bend her knee, presenting significant challenges to walking and navigating to and from work sites. It further requested that HHC provide her with the necessary accommodations while she progresses through the healing process. Lastly, the physician's letter

explained that Plaintiff will be required to undergo advanced imaging to assess any possible additional problems with her knee, and that her healing process will continue to be monitored.

25.     On August 16, 2021, Plaintiff spoke with Marrazzo to inquire about the status of her request. Marrazzo responded that he had not heard back from Plaintiff's supervisor and therefore had no response (as of that date).

26.     On August 20, 2021, Plaintiff spoke with HHC's Regional HR Director, Sophia Isaac, about her pending request for an accommodation based on her disability. Isaac redirected Plaintiff to the EEO office and stated that it was not HR's responsibility and that HR had no oversight over the process.

27.     On August 24, 2021, Plaintiff emailed Marrazzo to express concern about the lack of response from the EEO office.

28.     On August 27, 2021, Marrazzo sent correspondence to Plaintiff that the EEO reviewed her request for an accommodation to work remotely based upon her disability and denied it, providing only that it was "unreasonable and/or poses an undue hardship." The letter neither stated how the request was unreasonable nor explained how it posed an undue hardship. The letter also failed to further engage in the interactive process and cooperative dialogue required under the law because it simply provided an ultimatum to Plaintiff that she return to work on Monday, August 30, 2021, or be terminated from her job.

29.     On August 30, 2021, fearing termination of her job because of her disability, Plaintiff attempted to continue the interactive process/cooperative dialogue by seeking an alternative reasonable accommodation in the form of short term, unpaid leave. On that same day, Plaintiff spoke with Isaac to voice her concern about the accommodation and reiterated that she remained committed to the job. During the conversation by phone, Isaac provided Plaintiff with

reassurance that she would reach out to the EEO office to get an understanding of the process and would follow up with Plaintiff. Plaintiff never heard back from Isaac.

30.     On that same day, August 30, 2021, HHC again denied Plaintiff's accommodation request, vaguely stating that the request was "unreasonable and/or poses an undue hardship." Once again, HHC supplied below the minimal effort required into the interactive process, failing to accommodate Plaintiff based upon her disability.

31.     On August 31, 2021, HHC provided Plaintiff with a termination letter stating that because she was not "eligible for any other leave and have been deemed unfit to perform the essential functions of your job with or without reasonable accommodation," her employment was terminated effective that date. This boiler plate language exhibits the complete lack of attention and care paid to Plaintiff's accommodation request, because there is absolutely no explanation or detail as to how Plaintiff could not perform the essential functions of her job with her requested accommodation.

32.     As a result, HHC failed to engage in the interactive process/cooperative dialogue that it was required to engage in, and terminated Plaintiff based on her disability and/or her request for an accommodation.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
### *Disability Discrimination in Violation of the ADA*

33.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

34.     The ADA prohibits discrimination against an employee on the basis of disability in regard to discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment.

35.     As described above, Defendant is an employer within the meaning of the ADA, while Plaintiff is an employee within the meaning of the ADA.

36.     As also described above, Defendant discriminated against Plaintiff by discharging Plaintiff on the basis of her disability and otherwise discriminated against Plaintiff with respect to the conditions and privileges of Plaintiff's employment based on her disability.

37.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

38.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

39.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### *Disability Discrimination in Violation of the NYCHRL*

40.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

41.     NYCHRL § 8-107 prohibits employers, because of an employee's disability, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

42.     As described above, Defendant discriminated against Plaintiff by terminating Plaintiff on the basis of her disability, in violation of the NYCHRL.

43.     As also described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

44.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

45.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the ADA*

46.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47.     The ADA prohibits employers from discriminating against an employee because the employee has in good faith opposed any practice made an unlawful employment practice under the ADA.

48.     As described above, Defendant is an employer within the meaning of the ADA, while Plaintiff is an employee within the meaning of the ADA.

49.     As also described above, after Plaintiff engaged in protected activity by requesting an accommodation under the ADA, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

50.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

51.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

52.     Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Retaliation in Violation of the NYCHRL*

53.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

54.     NYCHRL § 8-107(7) prohibits an employer from retaliating against an employee who has in good faith opposed any practice forbidden by the NYCHRL.

55.      As described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

56.     As also described above, after Plaintiff engaged in activity protected under the NYCHRL, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

57.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which Plaintiff is entitled to an award of monetary damages and other relief.

58.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

59.     Defendant's unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff so that Plaintiff is entitled to an award of punitive damages.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
### *Failure to Accommodate in Violation of the ADA*

60.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

61.     The ADA prohibits employers from discriminating against an employee on the basis of disability by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an employee, unless such employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer.

62.     As described above, Defendant is an employer within the meaning of the ADA, while Plaintiff is an employee within the meaning of the ADA.

63.     As also described above, Defendant discriminated against Plaintiff by failing to reasonably accommodate Plaintiff's known disability even though such accommodation posed no undue hardship on the operation of the employer's business, in violation of the ADA.

64.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

65.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the ADA, Plaintiff has suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

66.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the ADA, for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Engage in Cooperative Dialogue in Violation of the NYCHRL*

67.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68.     NYCHRL § 8-107(28) prohibits employers from refusing or otherwise failing to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the employer has notice may require such an accommodation related to a disability. NYCHRL §8-107(28) additionally requires that upon reaching a final determination at the conclusion of a cooperative dialogue, the employer shall provide an employee requesting an accommodation with a final written report.

69.     As described above, Defendant refused or otherwise failed to engage in a cooperative dialogue within a reasonable time of Plaintiff's request for an accommodation, which Plaintiff required based upon her disability, in violation of the NYCHRL.

70.     As also described above, Defendant failed to issue Plaintiff a final written report at the conclusion of the cooperative dialogue process, in violation of the NYCHRL.

71.     As also described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

72.     As a direct and proximate result of Defendant's failure to engage in a cooperative dialogue in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

73.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

## DEMAND FOR A JURY TRIAL

74.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.      A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.      An order granting preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.      An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

d.      An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with Plaintiff's claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendant's unlawful conduct;

e.      An award of damages to be determined at trial to compensate Plaintiff for harm to Plaintiff's professional and personal reputations and loss of career fulfillment in connection with Plaintiff's claims;

f.      An award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with Plaintiff's claims;

g.      An award of punitive damages to the extent permitted by law, commensurate with Defendant's ability to pay;

h.      An award to Plaintiff of reasonable attorneys' fees, as well as Plaintiff's costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

i.      An award of pre-judgment and post-judgment interest, as provided by law; and

j.      Granting Plaintiff such other and further relief, including equitable relief, as this

Court finds necessary and proper.

Dated: White Plains, New York
         August 16, 2022

                                        Respectfully submitted,

                                        STEVENSON MARINO LLP
                                        *Attorneys for Plaintiff*
                                        445 Hamilton Avenue, Suite 1500
                                        White Plains, New York 10601
                                        Tel.    (212) 939-7229
                                        Fax.    (212) 531-6129


                        By:     _____

                                JEFFREY R. MAGUIRE